# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12cv02394-JLK

LAGALIA A. AFOLA, Individually and as Personal Representative of
THE ESTATE OF TERRELL D. GRISWOLD,

       Plaintiffs,

v.

CORRECTIONS CORPORATION OF AMERICA,
WARDEN BRIGHAM SLOAN, in his Individual and Official Capacity,
DAVID OBA, M.D., in his Individual and Official Capacity,
MANDY MARQUEZ, R.N., in her Individual and Official Capacity,
MARY BUENO-SANDOVOL, LPN, in her Individual and Official Capacity,
CAPTAIN TROY ABDULLA, in his Individual and Official Capacity,
CORRECTIONS OFFICER TRUJILLO, in his Individual and Official Capacity,
SERGEANT MARY LEYBA, in her Individual and Official Capacity,
ANGIE TURNER, RN, HSA, in her Individual and Official Capacity,
STEVE L. BROWN SR., in his Individual and Official Capacity,
LEON KELLY, M.D., in his Individual and Official Capacity,
ROBERT FOWLER, in his Individual and Official Capacity,
GREGORY KIRKLAND, in his Individual Capacity,

       Defendants.

---

## ORDER GRANTING DEFENDANT FOWLER'S MOTION TO DISMISS

Kane, J.

      On October 28, 2010, Terrell D. Griswold died in his jail cell while incarcerated at

Bent County Correctional Facility (BCCF). His estate and his mother, Ms. Lagalia Afola,

bring this lawsuit against a number of state and county defendants, alleging various

federal and state constitutional causes of action arising out of Mr. Griswold's

incarceration, the medical care (or alleged lack thereof) he received at BCCF before his

death, and an alleged cover-up of the circumstances of his death. The matter is currently

before the Court on Defendant Robert Fowler's Motion to Dismiss, Doc. 61, for failure to

state a claim per Federal Rule of Civil Procedure 12(b)(6).[1] Defendant Fowler, MD. is the

County Coroner for Otero County, the county in which the hospital where Mr. Griswold

was pronounced dead is located.  He is sued individually and in his official capacity.

Of the Second Amended Complaint's seven claims, two are lodged against

Defendant Fowler, specifically, claims for conspiracy under 42 U.S.C.§§ 1983 and 1985.

I find Defendant Fowler's briefing persuasive, and GRANT his Motion as to dismissing

both claims.  I am mindful that this case is still in its infancy, that discovery has yet to

commence, and that claims for conspiracy often present unique pleading challenges, but I

nonetheless have find that the Second Amended Complaint is insufficient under

*Iqbal/Twombly*.

### Legal Standard

The United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 544 (2007) sets out the standard for considering a motion to dismiss for

failure to state a claim. It is no longer enough that a claim be conceivable; it must be

plausible. *Id*. at 570. This standard has been characterized by the Tenth Circuit as

follows: "to withstand a motion to dismiss, a complaint must contain enough allegations

of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519

F.3d 1242, 1247 (10 Cir. 2008), (quoting *Twombly*, 550 U.S. at 570). Furthermore:

> [u]nder this revised standard, as we explained in *Ridge at Red
> Hawk, L.L.C. v. Schneider*:

---

[1] In total, there are thirteen named Defendants in this matter; only Defendant Fowler
moves to dismiss, the others having Answered.

> the mere metaphysical possibility that *some*
> plaintiff could prove *some* set of facts in support
> of the pleaded claims is insufficient; the complaint
> must give the court reason to believe
> that *this* plaintiff has a reasonable likelihood of
> mustering factual support for *these* claims.

> 493 F.3d 1174, 1177 (10 Cir. 2007) (emphasis in original).
> The burden is on the plaintiff to frame a "complaint with
> enough factual matter (taken as true) to suggest" that he or
> she is entitled to relief. *Twombly*, 127 S. Ct. at 1965.

*Id.* at 1247. More recently, the Supreme Court further clarified the pleading requirements
set forth in *Twombly*:

> To survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a claim to
> relief that is plausible on its face." [T*wombly*, 550 U.S.] at 570,
> 127 S.Ct. 1955. A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the
> misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The
> plausibility standard is not akin to a "probability requirement,"
> but it asks for more than a sheer possibility that a defendant
> has acted unlawfully. *Ibid.* Where a complaint pleads facts that
> are "merely consistent with" a defendant's liability, it "stops
> short of the line between possibility and plausibility of
> 'entitlement to relief.'" *Id.*, at 557, 127 S.Ct. 1955 (brackets
> omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

*Background*

The operative complaint alleges a plethora of federal and state constitutional

violations against several defendants. Generally, Plaintiffs allege that Mr. Griswold was

denied adequate medical care while incarcerated at BCCF, that that denial led to his

premature death, and that various defendants conspired to cover up the true facts

surrounding Mr. Griswold's death.  Plaintiffs do not allege that Defendant Fowler was

involved in any of the acts occurring before Mr. Griswold's death. Therefore, a detailed summary of all of the factual allegations in the complaint is not necessary to address the issues concerning Defendant Fowler.

Regarding the aftermath and investigation of Mr. Griswold's death, the Second Amended Complaint alleges that Dr. Fowler conspired with various other defendants to cover up the alleged true causes of decedent's death by lying to Mrs. Afola, refusing to provide the death certificate, and then falsifying the cause of death. Doc. 58-1, at p. 16, ¶ 77. Specifically, Plaintiff Afola alleges that Defendants Kirkland and Brown, both Colorado Department of Corrections employees, met at BCCF on the day Mr. Griswold died and "conspired and acted in concert to destroy and falsify evidence" and also met with Defendant Dr. Kelly, a forensic pathologist for El Paso county, during the autopsy Defendant Kelly performed on Mr. Griswold. Doc. 53-1 at pp. 13-14, ¶¶ 67-68. Defendants Kirkland and Brown reportedly told Defendant Kelly that Mr. Griswold "refused to take his blood pressure medications." *Id*. at p. 14, ¶ 68. Following the autopsy, Plaintiff Afola alleges that Defendant Kelly falsely reported the cause of death to be "hypertensive cardiovascular disease and a refusal to take blood pressure medications," which findings were released in a report on November 24, 2010. *Id*. at p. 14, ¶¶ 69-70. Plaintiff Afola alleges that she was told by Defendant Kirkland on October 29, 2010, that Defendant Kelly "said the cause of death was an enlarged heart only, no other problems." *Id*. at p. 12, ¶ 61. Plaintiff Afola believes her son died of complications from a complete urinary obstruction. *Id.* at p.15, ¶75.

There are no allegations regarding any meetings or conversations or, indeed, any kind of contact between Defendant Fowler and any of the other Defendants.  All allegations concerning Defendant Fowler discuss Plaintiff Afola's contacts with him. Having been told Dr. Fowler served as coroner for her son, she began to telephone him. *Id.* at p. 12, ¶ 59.  When Dr. Fowler "finally" answered her calls, he allegedly told her that her son died of "cardiomegaly, heart 500-600 grams, an unknown condition, not something anyone could have known of, and like what you see in athletes who suddenly die." *Id.* at p. 12, ¶62.  Plaintiff Afola also alleges that Defendant Fowler delayed in releasing Mr. Griswold's death certificate and refused to change such certificate to reflect the cause of death as complications from urinary obstruction.  *Id.* at pp. 16, 25 ¶¶ 77, 97. Ms. Afola states:

> Coroner Fowler joined in the conspiracy by lying to Mrs. Afola, refusing to provide the death certificate, and then falsifying the cause of death. Both he and Investigator Kirkland told Plaintiff Afola that her son died due to an enlarged heart or cardiomegaly. When pressed to be truthful on December 28, 2010, Robert Fowler promoted the conspiracy by insisting to Mrs. Afola that her son refused to take his blood pressure and prostate medications.
>
> …
>
> [Defendant Fowler] furthered the conspiracy by relaying misinformation, by refusing to release the death certificate for months, and by refusing to correct the cause of death which incorrectly indicates that obstructive uropathy played no part in the death.

*Id.*

### *42 U.S.C. §1985—Conspiracy*

A claim brought pursuant to 42 U.S.C.§ 1985 requires a showing of "(1) a conspiracy, motivated by racially discriminatory animus; (2) to deprive plaintiff of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) a deprivation of rights resulting therefrom." *Paris v.Southwestern Bell Telephone Co*., 94 Fed. Appx. 810, 815 (10 Cir. 2004).

The Second Amended Complaint states that "Plaintiff is alleging based on information and belief that the conspiracy was motivated by racial animus. Plaintiff Afola and her son are African- Americans." Doc. 58, at p. 23, ¶ 92. Apart from an earlier allegation that Mr. Griswold "was a 26 year old African American man," *id*. at p. 2, ¶ 5, this is the only allegation in the entire 32 page Second Amended Complaint referencing race in any manner.

A bare assertion that the plaintiff and defendant are of different races race does not sufficiently allege racial animus. "Mere differences in race do not, by themselves, support an inference of racial animus." *Green v. Corr. Corp. of Am*., 401 Fed. Appx. 371, 376 (10 Cir. 2010). For example, in *Sawyer v. Burke*, the Tenth Circuit upheld the United States District Court for the District of Kansas's sua sponte dismissal of a pro se prisoner complaint. *Sawyer v. Burke*, 2012 WL 5974236 * 2 (10 Cir. 2012)(unpublished decision). The district court had found no allegations to support racial animus and the Tenth Circuit agreed, holding, "[the plaintiff] has offered nothing more than the unsubstantiated assertion that because he is African American, the decision to withhold the clock radio and stereo was motivated by racial animus." *Id.*

*See also Casillas v. Beach*, 2010 WL 1348397 * 5-6 (D. Colo. 2010) ("Plaintiff states that 'the actions of the Defendants were racially motivated.' Plaintiff does not allege any other facts that would demonstrate racial animus or discrimination based on race, or explain why he believes Defendants' alleged conduct was motivated by race."); *Howard v. Las Animas County Sheriff's Office,* 2010 WL 1235668 * 10 (D. Colo. 2010) ("Plaintiff has presented nothing more than conclusory allegations to show agreement and concerted action among Defendants. For example, he alleges that there was an 'agreed conspiracy in racial animus,' ..."); *Johnson v. City of New York*, 669 F. Supp. 2d 444, 450 (S.D.N.Y. 2009) ("The mere fact that plaintiff and defendants are of different races, standing alone, is simply insufficient as a factual pleading to allege racially motivated discrimination for purposes of a plausible section 1981 claim.").

Plaintiff Afola's simplistic argument that the alleged conspiracy may be presumed to have been motivated by racial animus purely because she and her son are African-American is insufficient to survive a 12(b)(6) motion to dismiss.  Allowing the claim against Dr. Fowler to proceed by sole virtue of the phrase "racial animus" being included in the allegation is squarely at odds with *Iqbal*'s admonition not to tolerate "threadbare recitals of a cause of action's elements" as bases for suit.

### 42 U.S.C. § 1983—Conspiracy

A prima facie claim for conspiracy under 42 U.S.C. § 1983 consists of the following elements: "(1) a shared conspiratorial objective (the agreement to deprive the Plaintiff of a constitutional or statutory right); (2) concerted action by the Defendants; and (3) an actual deprivation of rights." *Snell v. Tunnell,* 920 F.2d 673, 702 (10 Cir.

1990). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983

claim." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1994).  To state

a cause of action for conspiracy under § 1983, a plaintiff must "allege specific facts

showing agreement and concerted action among defendants." *Durre v. Dempsey*, 869

F.2d 543, 545 (10 Cir. 1989).  More specifically,

> [A]n allegation of parallel conduct and a bare assertion of
> conspiracy will not suffice. Without more, parallel conduct
> does not suggest conspiracy, and a conclusory allegation
> of agreement at some unidentified point does not supply facts
> adequate to show illegality. Hence, when allegations of
> parallel conduct are set out. . . they must be placed in a
> context that raises a suggestion of a preceding agreement, not
> merely parallel conduct that could just as well be independent
> action.

*Twombly*, 550 U.S. at 556-57. "[A]n allegation of parallel conduct absent context

implying a meeting of the minds" is, by itself, insufficient to withstand a motion to

dismiss."  *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10 Cir. 2010).

Although I am required to make all reasonable inferences from the facts in

Plaintiffs' favor, I  need not sift through Plaintiffs' entire complaint in search of a

coherent theory for their conspiracy claim. *See Tonkovich,* 159 F.3d at 533-34. I have

made every effort to entertain all reasonable inferences regarding Plaintiff's contentions,

but here the averments simply fail in detail and theory. The sequence of events set forth

by Plaintiffs does not provide the context and inference of meeting of the minds between

Defendant Fowler and any other Defendant.

The Second Amended Complaint clearly represents that it was Plaintiff Afola who

sought out Defendant Fowler to ask him questions—Defendant Fowler did nothing of his

own accord to reach out in furtherance of the alleged conspiracy.  Assuming, as is required, that the allegations in the Second Amended Complaint are true, if Defendant Fowler spoke to Plaintiff Afola about Mr. Griswold's enlarged heart or blood pressure medications, there is nothing to indicate that he was not simply repeating the findings made by the pathologist, Defendant Dr. Kelly.  Indeed, it is difficult to understand how Defendant Fowler, who did not perform the autopsy and was not present at the autopsy, could take a position different from the person who had actually performed the autopsy, Dr. Kelly.  Similarly, with respect to Plaintiff Afola's allegations regarding Defendant Fowler's alleged delay in releasing the death certificate and alleged refusal to change such certificate, it is difficult to understand how Defendant Fowler could legitimately include a cause of death on the death certificate different from the cause determined by Defendant Kelly who, again, had actually performed the autopsy and who allegedly also refused to change the cause of death from cardiac hypertrophy due to hypertension.

Plaintiffs have not provided allegations regarding a meeting of the minds between Defendant Fowler and any other Defendant save for the bare conclusory allegation that there was a conspiracy.  No suggestions are provided for a context in which a conspiracy may be inferred, as in, for example, what motivation Defendant Fowler might have to cover up the cause of death of an inmate.  Plaintiffs' allegations set forth only a "sheer possibility" that Defendant Fowler was involved in a conspiracy and are insufficient to survive the Motion.

*Defendant Fowler is Entitled to Qualified Immunity*

Defendant Fowler also argues he is, in any event, entitled to qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A motion based on a claim of qualified immunity imposes the burden on the plaintiff to show "both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation." *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir.2009) (internal quotations omitted).

Plaintiffs offer, among other amiss authority, *Stump v. Gates,* 986 F.2d 1429, *1 (10 Cir. 1993) (unpublished) in support of their proposition that Defendant Fowler's conduct violated a "clearly established right." In *Gates*, the Tenth Circuit denied qualified immunity to a police chief and a detective after considering "whether a reasonable officer would have known at the time of [decedent's] death that a deliberate failure to investigate and quick destruction of evidence that might have proved homicide was a violation of the decedent's children's right of access to the courts." *Id*. at * 2. The Tenth Circuit stated that "[w]e believe that any reasonable officer would have known that if the conduct occurred as alleged by the plaintiffs in this case, it would violate the constitutional rights of the decedent's children." *Id*. at * 3. Here, however, there is no allegation that Defendant Fowler was responsible for any "quick destruction" of evidence

and no allegation that Defendant Fowler had a duty to investigate decedent's death

beyond ordering an autopsy and then referring the matter back to Bent County.[2]

Moreover, the allegations found in the *Gates* complaint regarding evidence

destruction were greatly more detailed than those alleged by the Plaintiffs in this case.

As discussed in the District Court opinion, the *Gates* plaintiffs specifically alleged that

the defendants destroyed, among other evidence, two guns found at decedent's home.

*Stump v. Gates*, 777 F.Supp. 808, 812 (D.Co.1991).  Additionally, Plaintiffs provided a

date for the alleged destruction, June 1, 1984.  *Id.*

Although the Second Amended Complaint in this case is peppered with vague

allegations that Defendant Fowler destroyed/conspired to destroy evidence, there are no

allegations that Defendant Fowler destroyed/conspired to destroy any particular evidence,

nor does the Complaint ever allege when Defendant Fowler is believed to have

destroyed/conspired to have destroyed any evidence.  Of course, a plaintiff need not

always plead with specificity what or when evidence is believed to have been

destroyed—the very act of destruction, after all, may make such knowledge impossible.

Nonetheless, it is reasonable to expect Plaintiffs to bolster their claims against Defendant

Fowler by, at the very least, sketching out the essential nature of what evidence

Defendant Fowler might possibly have destroyed, e.g., an autopsy or other medical

records.  That this is smart pleading is surely recognized by Plaintiffs themselves, as

---

[2] It is worth mentioning that Defendant Fowler is the *Otero* County Coroner.  Defendant Fowler figures in this case only because Mr. Griswold died after being transported to the Arkansas Valley Regional Medical Center, which is located in Otero County.  As the Otero County Coroner, Defendant Fowler ordered an autopsy to be completed and then referred the matter back to the originating county, Bent County, as that is from where Mr. Griswold was transported and is where BCCF is located.

elsewhere they allege specific pieces of evidence destroyed by specific individuals.  For example, at ¶ 45, Plaintiffs allege that Corrections Corporation of America ("CCA") "destroyed copies of Mr. Griswold's kites and altered the electronic kite log."  At ¶70, Defendant Kelly is alleged to have "failed to take or destroyed internal photographs."  At ¶71, Defendant Department of Corrections ("DOC") is alleged to have "falsified or destroyed witness statements," and Defendant Kirkland is alleged to have destroyed video surveillance.

Defendant Fowler suggests, and I agree, that this case is more similar to a more recently decided case, *Lynch v. Barrett*, 703 F.3d 1153, 1155 (10 Cir. 2013).  The plaintiff in that case claimed that the defendant officers had violated his right of access to the courts by withholding the identities of the officers who had allegedly used excessive force against the plaintiff. The Tenth Circuit noted that it had previously rejected a right of access claim based on a "code of silence" and stated as follows:

> At least in the Tenth Circuit, the question of whether an evidentiary cover-up by police officials may violate an individual's constitutional right to court access was not clearly established at the time of the alleged violation. A reasonable officer might not have understood what Defendant Officers did (or refused to do) violated that right.

*Id*. at 1162.

Although Defendant Fowler is a coroner, not a police officer, Plaintiffs have not pointed to any authority indicating that this analysis would be different for a coroner than a police officer.  Indeed, one would expect a coroner to be less up to speed on constitutional violations than a police officer.  Because Plaintiffs have failed to establish either that

Defendant Fowler violated any constitutional rights of Plaintiffs, or that such rights were clearly established, he is entitled to qualified immunity.

*Plaintiffs Are Not Entitled to Attorney Fees*

Plaintiffs request their attorney fees per 28 U.S.C. § 1927, asserting that Defendant Fowler's Motion is "frivolous and vexatious" and that it caused them prejudicial delay. To support this contention, Plaintiffs state that Defendant Fowler's arguments were already raised in the Motions to Dismiss filed by Defendants Kelly and Kirkland. That those motions and the instant motion may share overlapping arguments is irrelevant in two respects and the delay argument is a non-sequitur.

First, the Motions to Dismiss filed by Defendants Kelly and Kirkland were not ruled upon and were mooted upon Plaintiffs filing the Second Amended Complaint. The fact that they were not renewed upon Plaintiffs filing the Second Amended Complaint provides no information as to whether they were meritorious in the first instance. Second, the allegations set forth in the Second Amended Complaint with respect to Defendant Fowler are to be tested on the merits of the pleadings as they are directed to claims against him, not as they are directed against any other defendant. Defendant Fowler has not previously filed a dispositive motion in this matter and Plaintiffs have not presented any legitimate justification as to why Defendant Fowler should not be allowed to test the sufficiency of the allegations against him.

Finally, Plaintiffs' argument that they are prejudiced by the delay of the proceedings caused by Defendant Fowler's Fed. R. Civ. P. 12 Motion fails to

acknowledge that the Motion is in response to Plaintiffs' third attempt to set out their

claims in a complaint.

*Conclusion*

For the foregoing reasons, I GRANT Defendant Fowler's Motion to

Dismiss, Doc. 61, and DENY Plaintiffs' request for attorney fees.


DATED:        June 10, 2013                    BY THE COURT:
                                               */s/John L. Kane*
                                               John L. Kane, U.S. Senior District Judge